**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| JAMES JEFFERSON,<br><br>Plaintiff,<br><br>v.<br><br>HSBC BANK, NEVADA, N.A., and BEST BUY CO., INC.<br><br>Defendants. | Case No.: 2:08-cv-121-WKW |

**DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS, OR, IN THE ALTERNATIVE, TO DISMISS**

Defendants HSBC Bank, Nevada, N.A. ("HSBC") and Best Buy Co., Inc. ("Best Buy") move for an order compelling plaintiff to arbitrate his claims against HSBC and Best Buy, and staying further proceedings in this case pending resolution of the arbitration; or, in the alternative, dismissing plaintiff's action. In support hereof, the defendants submit the affidavit of Juan Wheat, attached as Exhibit "A," and the credit application/terms and conditions of the HSBC/ Best Buy credit card at issue in this case, referenced in the Wheat affidavit and attached as Exhibit "B."

1. In this action, plaintiff says that he obtained a Best Buy credit card issued by HSBC, and used this credit card to purchase a computer from a Best Buy store in Montgomery, Alabama. He complains that, upon returning the computer for a refund on his Best Buy card, the charged purchase price was not removed from his Best Buy/HSBC card. He demands compensatory and punitive damages against the defendants, jointly and

severally, for violation of the Fair Credit Billing Act along with various Alabama common law claims. (Compl. ¶¶ 6-47).

2. To obtain his Best Buy/HSBC credit card, plaintiff completed a Best Buy/HSBC credit card application, and submitted it to HSBC. HSBC furnished the credit card to plaintiff, along with the governing Cardholder Agreement and Disclosure Statement, which contain an arbitration provision. (Affd. of Juan Wheat, ¶ 5, Exhibit "A" hereto). In his application, plaintiff "agree[d] to the terms and conditions of the Cardholder Agreement and Disclosure Statement (which includes an Arbitration Provision) which shall be sent to you with the credit card." (Best Buy/HSBC credit card application, Exhibit "B" hereto). Plaintiff's arbitration provision states:

> **ARBITRATION**: Any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future), including initial claims, counter-claims, cross-claims and third party claims, arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement ("Claim"), shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed. The party initiating the arbitration proceeding shall have the right to select one of the following three arbitration administrators: the National Arbitration Forum ("NAF"), the American Arbitration Association ("AAA") or JAMS. The arbitrator shall be a lawyer with more than ten years experience or a retired or former judge. We agree not to invoke our right to arbitrate an individual Claim you may bring in small claims court or an equivalent court, if any, so long as the Claim is pending only in that court. The rules and forms of the NAF, AAA and JAMS may be obtained by writing to these organizations at the address listed below. Our address for service of process under this provision is HRS-USA, P.O. Box 279, Mount Prospect, IL 60056.
>
> Any participatory arbitration hearing that you attend will take place in the city nearest to your residence where a federal district court is located or at such other location as agreed by the parties. On any Claim you file, you will pay the first $50 of the filing fee. At your request we will pay the remainder of the filing fee and any administrative or hearing fees charged by the arbitration administrator on any Claim submitted by you in arbitration up to a maximum of

$1,500. If you are required to pay any additional fees to the arbitration administrator, we will consider a request by you to pay all or part of the additional fees; however, we shall not be obligated to pay any additional fees unless the arbitrator grants you an award. If the arbitrator grants an award in your favor, we will reimburse you for any additional fees paid or owed by you to the arbitration administrator up to the amount of the fees that would have been charged if the original Claim had been for the amount of the actual award in your favor. The parties shall bear the expense of their respective attorney's fees, except as otherwise provided by law. If a statute gives you the right to recover any of these fees, or the fees paid to the arbitration administrator, these statutory rights shall apply in the arbitration notwithstanding anything to the contrary contained herein. If the arbitrator issues an award in our favor you will not be required to reimburse us for any fees we have previously paid to the arbitration administrator or for which we are responsible.

This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1 - 16 (the "FAA"). The arbitrator shall apply applicable substantive law consistent with the FAA and, if requested by either party, provide written reasoned findings of fact and conclusions of law. The arbitrator's award shall not be subject to appeal except as permitted by the FAA. The parties agree that the award shall be kept confidential. Judgment upon the award may be entered in any court having jurisdiction.

This arbitration agreement shall survive termination of your Account as well as the repayment of all amounts borrowed hereunder. If any portion of this arbitration agreement is deemed invalid or unenforceable under any law or statute consistent with the FAA, it shall not invalidate the remaining portions of this arbitration agreement or the Agreement. In the event of a conflict or inconsistency between the rules and procedures of the arbitration administrator and this arbitration agreement, this arbitration agreement shall govern. No class actions or joinder or consolidation of any Claim with the claim of any other person are permitted in arbitration without the written consent of you and us.

THE PARTIES ACKNOWLEDGE THAT THEY HAD A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER PARTY.

You may contact, obtain the arbitration rules of, or file a Claim with NAF, AAA or JAMS as follows:

| National Arbitration Forum | American Arbitration Association | JAMS |
|---|---|---|
| P.O. Box 50191 | 1150 Connecticut Ave. NW, 6th Floor | 45 Broadway |
| Minneapolis, MN 55405 | Washington DC 20036-4104 | New York, NY 10005 |
| www.arb-forum.org | www.adr.org | www.jamsadr.com |
| Code of Procedure | Arbitration Rules for Consumer Disputes (Claims under $10,000). Commercial Arbitration Rules (All other claims). | Financial Services Arbitration Rules and Procedures |

(See Exhibits "A", ¶ 5; "B", terms and conditions, ¶6).

4. The Federal Arbitration Act, 9 U.S.C. §1 *et seq*. ("FAA"), provides for "the enforcement of arbitration agreements within the full reach of the Commerce Clause." *Citizens Bank v. Alafabco, Inc.,* 539 U.S. 52, 56 (2003). Congress's Commerce Clause power "may reach a transaction even if the individual transaction at issue does not have a 'substantial effect' on interstate commerce if 'in the aggregate the economic activity in question would represent a general practice . . . subject to federal control.' " *Alafabco*, 539 U.S. at 56-57 (quoting *Mandeville Island Farms, Inc. v. American Crystal Sugarco*, 334 U.S. 219, 236 (1948)). As the Alabama Supreme Court has recognized, "[e]vidence that a party to a transaction does business outside of Alabama or that it regularly deals in interstate commerce is sufficient to demonstrate that the transaction involves interstate commerce." *Edwards v. Costner*, 2007 W.L. 2343706 *5 (Ala.).

5. Here, HSBC, which issued plaintiff's Best Buy card, is a national bank headquartered in Nevada. HSBC does not maintain branches or offices in Alabama, but rather deals with Alabama customers across state lines using telephones, conventional and electronic mail. (¶5, Exhibit "A"). The agreed governing arbitration provision states, "[t]his arbitration agreement is made pursuant to a transaction involving interstate commerce, and

shall be governed by the Federal Arbitration Act . . ." (¶6, Exhibit "B"). Accordingly, plaintiff's credit transaction clearly involves interstate commerce, thereby triggering the FAA.

6. Best Buy, though a nonsignatory, also is entitled to arbitration of plaintiff's claims. Plaintiff's claims against Best Buy and HSBC are indistinguishable and interdependent. Plaintiff says that HSBC improperly required him to pay for a computer charged by Best Buy to plaintiff's Best Buy credit card issued through HSBC; he demands joint and several damages of both defendants. By its terms, the arbitration agreement "applies to any claim . . . arising from or relating to this [Best Buy/HSBC credit card] agreement *or the relationships which result from this agreement* . . ." (¶6, Exhibit "B", emphasis added). Plaintiff's claims against HSBC and Best Buy are entwined so that both defendants are entitled to arbitration. *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.,* 269 F. 3d 187 (3rd Cir. 2001) (Arbitration may be compelled by a nonsignatory to an arbitration provision, "[a]t the nonsignatory's insistence, because of 'the close relationship between the entities involved, as well as the relationship to the alleged wrongs to the nonsignatory's obligations and duties in the contract . . . and [the fact that] the claims [are] intimately founded in and intertwined with the underlying contract obligations.' " (quoting *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F. 3d 753, 757 (11th Cir. 1993)).

7. Accordingly, all claims alleged in this case are embraced within the scope of the agreed governing arbitration provision. (Exhibit "B" ¶6). As specified within the arbitration provision, plaintiff has the right to select from three arbitration administrators: The National Arbitration Forum; The American Arbitration Association; or JAMS. Any participatory arbitration hearing must take place in the city nearest plaintiff's residence where

a federal district court is located and the parties agree to an equitable division of the filing fee, and cost-shifting mechanisms are in place to guard against unconscionability.

9. In conclusion, the arbitration provision contained in the Cardmember Agreement governing plaintiff's account is valid, binding, and encompasses the matters in dispute in this case. The Court should, therefore, stay further proceedings pending resolution of the arbitration; or, in the alternative, dismiss plaintiff's action and compel plaintiff to arbitrate his claims against the defendants pursuant to the arbitration provision contained in the Cardholder Agreement. *See* 9 U.S.C. §3; *see also Hurst v. Tony Moore Imports, Inc*. 699 So. 2d 1249 (Ala. 1997).

WHEREFORE, premises considered, HSBC and Best Buy respectfully request that this Court issue an order compelling plaintiff to arbitrate his claims against these defendants. These defendants further request that the Court stay proceedings pending resolution of the arbitration, or, in the alternative, dismiss plaintiff's action in its entirety.

Respectfully submitted,

s/Michael M. Shipper
MICHAEL M. SHIPPER (SHIPM7574)
KIRKLAND E. REID (REIDK9451)
Attorneys for Defendants Best Buy
and HSBC

OF COUNSEL:

Miller, Hamilton, Snider & Odom, L.L.C.
Post Office Box 46
Mobile, Alabama 36601
(251) 439-7530

**CERTIFICATE OF SERVICE**

This certifies that a true and accurate copy of the foregoing document has been served electronically upon the following on this  10th  day of March 2008:


W. Whitney Seals
Pate & Cochrane
P.O. Box 10448
Birmingham, Alabama 35202-0448

Michael W. Lindsey
Weaver Tidmore, LLC
300 Cahaba Park Circle, Suite 200
Birmingham, Alabama 35242


                                        s/Michael M. Shipper
                                        Michael M. Shipper



IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JAMES JEFFERSON,<br><br>Plaintiff,<br><br>v.<br><br>HSBC BANK, NEVADA, N.A.,<br>and BEST BUY CO., INC.<br><br>Defendants. | )<br>)<br>)<br>)<br>) Case No.: 2:08-cv-121-WKW<br>)<br>)<br>)<br>)<br>)<br>) |

AFFIDAVIT OF JUAN WHEAT

STATE OF ILLINOIS )
)
COUNTY OF COOK )

The affiant, having been duly sworn, deposes and states as follows:

1. My name is Juan Wheat. I am over the age of nineteen (19) years and am of sound mind. I have personal knowledge of the facts set forth herein, which facts are true and correct.

2. I am an Account Executive for HSBC Private Label Corporation, which services the private label credit card programs issued by HSBC Bank, Nevada, N.A. (the "Bank"). As such, I am familiar with the business operations and the records of the Bank.

3. The Bank, formerly known as Household Bank (SB), N.A., is a national bank, chartered under the laws of the United States of America headquartered in Nevada. The Bank enters into credit card contracts with customers and issues credit cards to consumers under trade names, including the Best Buy Private Label Credit Card Program.

4.    The Bank does not maintain branches or offices in the State of Alabama. Business dealings with Alabama cardholders are conducted across state lines using telephone, and traditional and electronic mail - - transactions that involve and affect interstate commerce.

4.    I have reviewed and am familiar with the records of the Bank relating to the Best Buy/HSBC credit card account issued to plaintiff, James Jefferson, under Best Buy account # 70212701 72217522, that forms the basis of the above-captioned lawsuit.

5.    To open his account, Mr. Jefferson completed and executed an application for a Best Buy/HSBC credit card, as a result of purchases made on the account, became bound to the terms and conditions of the Best Buy/HSBC Cardholder Agreement and Disclosure Statement furnished to plaintiff Jefferson.  A true and correct copy of Mr. Jefferson's executed credit application and credit card terms and conditions is attached hereto as Exhibit "B".

6.    As Mr. Jefferson says in his complaint, on September 26, 2006, Mr. Jefferson purchased a computer from a Best Buy Store in Montgomery, Alabama and charged the purchase price of $561.48 to his Best Buy/HSBC credit card.

FURTHER, THE AFFIANT SAYETH NOT.

Juan Wheat

Subscribed and sworn to before me by Juan Wheat on this 10th day of March, 2008, to certify which, witness my hand and official seal.

Notary Public in and for
The State of Illinois

My Commission expires: 03/04/2011

OFFICIAL SEAL
CHRISTINE H TOLEMY
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/04/11

EXHIBIT
B
ALL-STATE LEGAL

NO POSTAGE NECESSARY IF MAILED IN THE UNITED STATES

**BUSINESS REPLY MAIL**

FIRST-CLASS MAIL PERMIT NO. 492 WILMINGTON, DE

POSTAGE WILL BE PAID BY ADDRESSEE

BEST BUY CREDIT CARD/MASTERCARD
HOUSEHOLD BANK (SB), N.A.
PO BOX 15519
WILMINGTON DE 19885-5519

• Online Account Management and Bill Payment.

*See Cardholder Agreement and Disclosure Statement and Best Buy Card Consumer Credit Plans for details.

Rev. 10/03

6022-BEST BUY-18 (10-03)

BestBuy.com™



## So many reasons to use your Best Buy credit card:

**No Interest Financing* plans available every day.**

- 90 day Financing – No Minimum Purchase Required.
- 6 month Financing – On purchases totaling $299 and up.

- Weekly Extended Financing specials.
- Quick credit decisions.
- No Annual Fee – Low Monthly Payments.
- Exclusive money-saving offers.
- Online account management and bill payment.

# Take home the fun today

BEST BUY
7001060123456789
VALUED CUSTOMER

* No minimum purchase required for 90 day plan. Minimum total purchase of $299 required for 6 month plan. Required minimum monthly payment is greater of $10 or 2.25% of balance. Interest will be charged to your account from the date of purchase if plan balance is not paid in full within 90 days for 90 day plan or 180 days for 6 month plan, or if minimum monthly payments are not made. Available in-store only. See Product Specialist for details.

## APPLY TODAY FOR A HOUSEHOLD BANK MASTERCARD

- Complimentary $25 Best Buy Gift Card.†
- Introductory APR's as low as 0% and a range of competitive APRs.††
- Toll-free phone and account management online 24 hours/day, 7 days/week.
- Acceptance at more than 17 million online and retail locations worldwide.
- Cash access at more than one million bank and ATM locations worldwide.

†To qualify, we must receive your first minimum payment when due.

††Contingent upon a review of your credit worthiness. See "Important Terms of the Household Bank Platinum, Gold and Standard MasterCards" for additional information.

Best Buy Business credit accounts also available. Please see Customer Service Specialist for details.

BestBuy.com™

© 2003 Best Buy Inc.

**1. APPLICANT: Incomplete form may result in decline of your application.** For WI Residents Only: Check box if you are married: ☐

First Name: James | Middle Initial: | Last Name: Jefferson | Social Security Number: 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 | Date of Birth (MM/DD/YY): 7/13/24

Current Address: PO Box 137/75 Langford Ln. | Apt. #: | City: Elmore | State: Al | Zip: 36025 | ☒ Own ☐ Rent ☐ Board

Home Phone: (334) 285 3936 | Business Phone: ( ) | Annual Income*: 20,000 | Check if you have a: ☐ Checking Account ☐ Savings Account

Time at residence: 5 Years 0 Months | Time with employer: Ret. Years ___ Months | E-Mail Address (optional) By providing your e-mail address, you also consent to receive e-mails relating to offers and services from Best Buy Co., Inc. and its subsidiaries.

**2. JOINT APPLICANT: Please complete for Joint Credit or if you are a married WI resident.**

First Name | Middle Initial | Last Name | Social Security Number ___-__-____ | Date of Birth (MM/DD/YY) / /

Current Address | Apt. # | City | State | Zip

Home Phone ( ) | Business Phone ( ) | Annual Income*

**3. APPLICANT AND JOINT APPLICANT: SIGN HERE**

All of the information furnished on this application is, to the best of your knowledge, complete and accurate. You agree that we may obtain a credit bureau report on you and we may check any of the information provided on this application from whatever source we choose. By completing and signing this application, you request a Card issued to you by us which will allow you to make purchases under this Account. By a) signing, using or permitting others to use this Card; b) signing or permitting others to sign sales slips; c) making or permitting others to make purchases by telephone, Internet, or any other means, you agree to the terms and conditions of the Cardholder Agreement and Disclosure Statement, (which includes an arbitration provision) which shall be sent to you with the credit card. If this is a joint credit application, you understand that each applicant has the right to use the Account and that you shall be liable for all purchases made under the Account by any joint applicant. You grant us a purchase money security interest in the goods purchased on your Account. You understand **that we may provide information relating to our transactions and experiences with you to others, including Best Buy, whether or not you are approved for credit. You may prohibit the sharing of such information by calling us at 1-800-365-3804.**

Applicant's Signature: James Jefferson | Date (MM/DD/YY) / / | Joint Applicant's Signature | Date (MM/DD/YY) / /

**4. PROTECT YOUR ACCOUNT WITH ACCOUNT SHIELD™, AN OPTIONAL MONTHLY DEBT CANCELLATION PROGRAM.**

If you enroll in our optional Account Shield program, your monthly credit card balance or a portion of your balance may be cancelled in the case of a qualifying Total Disability, Involuntary Unemployment, Property Damage or Loss, or Loss of Life event. For Total Disability, the maximum balance that can be cancelled is $1,000 per month, up to $10,000, and for Involuntary Unemployment, up to $1,000 per month for six months. For Loss of Life or Property Damage or Loss, the maximum balance that can be cancelled is $10,000. To receive a cancellation for Involuntary Unemployment or Total Disability, you must be employed full-time (but not self-employed or working for a spouse or any other individual living with you on whom you are financially dependent for support and maintenance) and working 30 hours or more per week at a single job on the date the event occurs. Account Shield is not insurance and is unavailable in Mississippi, Montana, Guam, the Virgin Islands, Puerto Rico and Canada.

YES, please enroll me, the primary cardholder, in the optional Account Shield monthly debt cancellation program. I authorize the monthly charge to my account when I have a balance. I have received and read the Account Shield Summary. I understand that your evaluation of my credit card application will not be influenced by whether I choose to enroll and I am free to cancel at any time.

James Jefferson
SIGN HERE TO ENROLL | DATE

NO, I do not wish to enroll at this time.

SIGN HERE TO DECLINE | DATE

00-11-11 Ed. 03/07/03

**Apply for a MasterCard Today. A great value at Best Buy AND everywhere else.**

MasterCard
Household Bank MasterCard

If you have applied for a Best Buy credit card issued by Household Bank (SB), N.A., Las Vegas, Nevada ("us," "we," "our"), we invite you to apply for a Household Bank Platinum, Gold or Standard MasterCard. By signing below, you confirm that you have read and agree to all of the terms, authorizations, and disclosures contained on the panel entitled "Important Terms of the Household Bank Platinum, Gold and Standard MasterCards."

☐ **Please send me an additional Household Bank MasterCard issued in the name of the Best Buy credit card joint applicant. The Best Buy credit card joint applicant will be considered an authorized user for this MasterCard Account. I understand I will be solely responsible for all charges and transactions made by the authorized user and the authorized user will have no liability to the credit card issuer for those charges and transactions.**

X James Jefferson
Applicant's Signature | Date

(For Best Buy Use Only) MERCHANT #88 ___ ___ ___ ORG #169 SALE AMT. 1,000

APPLICATION # 0312100464811 ACCOUNT # ___ CREDIT LIMIT 2,200

I.D. #1 Photo ID (Applicant) Type: ☒ Drivers License I.D. # 10973019 State AL Date of Issue 10/02 Exp. Date 9/06

☐ Other # ___ State ___ Date of Issue / Exp. Date /

I.D. #2 Credit Card (Applicant) ☐ MC ☒ VISA ☐ AMEX ☐ DISCOVER Exp. Date / Alt. I.D.

I.D. #1 Photo ID (Joint Applicant) Type: ☐ Drivers License I.D. # ___ State ___ Date of Issue / Exp. Date /

☐ Other # ___ State ___ Date of Issue / Exp. Date /

*INCOME NOTICE: Can include all sources. You need not disclose alimony, child support or separate maintenance income if you do not wish to have it considered as a basis for repaying this obligation.

6022-BEST BUY-18 (10-03)

Ctr # 15991

LALA

IMPORTANT CUSTOMER DISCLOSURE INFORMATION ATTACHED - PLEASE DETACH AND RETAIN FOR YOUR RECORDS.

| | |
|---|---|
| **Annual Percentage Rate (APR) for Purchases** | Based upon our credit review, a fixed Introductory APR of **0%** or **3.9%** may apply for the first six billing cycles of your Account.[1] After that, or if you do not qualify for an Introductory APR, a variable Customary APR between **11.99%** and **22.99%**, inclusive, (as of 10/1/03) will apply and will never be less than between 11.99% and 22.99%,[2] inclusive. |
| **Annual Percentage Rate (APR) for Balance Transfers** | Based upon our credit review, a fixed Introductory APR of **0%** or **3.9%** may apply for the first six billing cycles of your Account.[3] After that, or if you do not qualify for an Introductory APR, a variable Customary APR between **11.99%** and **22.99%**, inclusive, (as of 10/1/03) will apply and will never be less than between 11.99% and 22.99%, inclusive. |
| **Other APRs** | Variable Customary Cash APR: 22.24% (as of 10/1/03).[4] Minimum Cash APR: 22.24% (as of 10/1/03). Variable Default APR: 24.24% (as of 10/1/03).[5] |
| **Variable Rate Information** | Your APR may vary. The rate is determined monthly by adding the Index (see description below) and: • Between 7.74% and 18.74%, inclusive, ("Spread") for the Customary APR for purchases and balance transfers. • 16.99% ("Spread") for the Customary Cash APR, including cash advances made by credit card check. • 19.99% ("Spread") for the Default APR. For each billing cycle, the Index is determined in the month prior to the month in which the billing cycle ends. In that prior month, the highest Prime Rate published in *The Wall Street Journal* is selected (the "Index"). If the Index has changed, the new variable rates will take effect with the billing cycle that ends on or after the first day of the month following the Index change. |
| **Grace Period for Purchases** | At least 20 days after the close of the previous billing cycle on new credit card purchases provided you paid your previous balance in full. |
| **Method for Computing the Balances for Purchases** | Average Daily Balance (including new purchases) Method. |
| **Annual Membership Fee** | Platinum MasterCard: None. Gold and Standard MasterCard: None to $99 based upon our credit review. You will be notified of the Annual Fee amount at the time you receive your card. |
| **Minimum Finance Charge** | $2.00 |

**Cash Advance Fee:** 5% per advance by credit card check, through the ATM or over the counter ($10 minimum); 5% for all other advances ($20 minimum) except balance transfers.
**Cash Advance Fee for Balance Transfers:** 2.5% for advances by promotional Balance Transfer Check ($5 minimum), provided the checks post to your Account on or prior to the expiration date printed on the check. Balance Transfer Checks may be limited.
**Overlimit Fee:** $29. Accessing all or most of your available credit line may result in an overlimit fee.
**Late Fee:** $29 on accounts with an Annual Membership Fee; $35 on accounts with no Annual Membership Fee.

[1] If you qualify, we will notify you of your Introductory APR for purchases at the time you receive your card. After the introductory period, or if you do not qualify for the Introductory APR, the variable Customary APR for purchases will apply. If at any time your Minimum Payment is received after the Payment Due Date, you exceed your credit limit on this or any other account issued by Household Bank or its affiliates, or you are otherwise in default under the terms of your Cardmember Agreement, your entire Account balance will change to the variable Default APR.

[2] The variable Customary APR will be based on your creditworthiness and will apply to purchases and balance transfers.

[3] If you qualify, we will notify you of your Introductory APR for Balance Transfers at the time you receive your card. After the introductory period, or if you do not qualify for the Introductory APR for Balance Transfers, the variable Customary APR for purchases will apply to these transferred balances. For any Balance Transfer Check that posts to your Account after the expiration date on the check, the variable Customary Cash APR will apply. If at any time your Minimum Payment is received after the Payment Due Date, you exceed your credit limit on this or any other account issued by Household Bank or its affiliates, or you are otherwise in default under the terms of your Cardmember Agreement, your entire Account balance will change to the variable Default APR.

[4] The variable Customary Cash APR will apply to cash advances (other than balance transfers), including cash advances made by other credit card checks, and will never be less than 22.24%. The Customary Cash APR will apply to Balance Transfer Checks posted to your Account after the expiration date on the check. Cash Advances may be limited.

[5] If at any time your Minimum Payment is received after the Payment Due Date, you exceed your credit limit on this or any other account issued by Household Bank or its affiliates, or you are otherwise in default under the terms of your Cardmember Agreement, the variable Default APR will apply to your entire Account balance, and will never be less than 24.24%. At our discretion, we may increase the Introductory APR to the Customary APR before increasing it to the Default APR.

**California Residents:** We may provide credit information about your Account to our affiliates from time to time. This information may be used to qualify you for other credit offers. Married persons may apply for a separate account. **New York Residents:** Consumer reports may be requested in connection with the processing of this application and any resulting Account. Upon your request, we will inform you of the names and addresses of any consumer reporting agencies that have provided us with such reports. **Ohio Residents:** The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law. **Married Wisconsin Residents:** No agreement, court order, or individual statement applying to marital property will adversely affect a creditor's interests unless prior to the time credit is granted the creditor is furnished with a copy of the agreement, court order, or statement, or has actual knowledge of the adverse provision.

**Information Sharing Disclosure: You agree that we may share information we receive about your creditworthiness ("Credit Information") and/or information relating to our transactions and experiences with you ("Experience Information") with persons related to us by common ownership or affiliated with us by corporate control ("Affiliates"). Our Affiliates may use this information to determine if you qualify for additional offers of credit. You may prohibit the sharing of Credit Information with our Affiliates by writing to us at P.O. Box 81622, Salinas, California 93912-1622 and including the name, address, social security number, signature, and account number (if applicable) for each person making the election. Your request will not apply to the sharing of Experience Information.**

The application for the Household Bank MasterCard will be evaluated solely based on the applicant. We do not evaluate any information provided based on the **Best Buy** credit card joint applicant. An additional card for the **Best Buy** joint applicant to use as an authorized user of the Household Bank MasterCard account may be requested at no extra cost by completing the appropriate section on the application form.

The information about the costs and benefits of the MasterCard described above is accurate as of October 1, 2003. This information may have changed after that date. To find out what might have changed, you should contact us by writing Household Bank, P.O. Box 81622, Salinas, CA 93912-1622.

This offer is available only to applicants who reside in the United States. Offer void for existing Household Bank Cardmembers.

Household Bank MasterCard, Gold MasterCard and Platinum MasterCard credit cards offered in this application are issued by Household Bank (SB), N.A. in Las Vegas, Nevada and are serviced by its affiliates, Household Credit Services, Inc. and Household Credit Services (II), Inc.

Household Bank is a registered mark of Household International, Inc.

MasterCard is a registered mark of MasterCard International, Incorporated.

**Please allow 14-21 days for your Household Bank Mastercard application to be processed.**

## ACCOUNT SHIELD™
## Summary

**IMPORTANT INFORMATION:** The Account Shield feature only applies to the primary cardholder (herein referred to as "You" and "Your"). **Your purchase of Account Shield is optional, and whether or not You enroll will not affect Your application for credit or the terms of any existing agreement You have with Household Bank (SB), N.A. (herein referred to as "We" or "Us").** Account Shield is sold by Us and the fees will be billed to Your credit card account. Upon acceptance of Your enrollment, You will receive Your Contract Provisions which will state the terms and conditions of Account Shield. Account Shield is a debt cancellation product and is not insurance. The Contract Provisions of Account Shield are an optional addendum to Your Cardholder Agreement. This document is only a summary of the Account Shield feature. **Please read Your Contract Provisions carefully for details of Your protection. There are eligibility requirements, conditions, and exclusions that could result in no benefits. You can find a complete explanation of the eligibility requirements, conditions and exclusions in sections 2 through 6 of Your Account Shield Contract Provisions.**

Account Shield is unavailable in Mississippi, Montana, Guam, the Virgin Islands, Puerto Rico and Canada.

**PROPERTY DAMAGE OR LOSS:** If there is damage or loss to merchandise purchased on Your credit card account, Account Shield will cancel from Your account an amount equal to the cost of repairing or replacing the merchandise up to the balance existing as of the date of the qualifying event, not to exceed $10,000.

**TOTAL DISABILITY:** Following 30 consecutive days of Total Disability, You are eligible for a cancellation of part of Your account's balance. Account Shield will cancel an amount equal to 10% of Your account's balance on the date You became totally disabled, up to $1,000 for each month that You remain totally disabled, not to exceed $10,000. You must have been employed full-time (but not self-employed or working for a spouse or any other individual living with You on whom You are financially dependent for support and maintenance) and working 30 hours or more per week at a single job on the date Total Disability began. If Total Disability occurs within 180 days of the date You either (1) elect Account Shield or (2) make a purchase or advance on Your account and Your Total Disability results from a preexisting medical condition as defined in the Contract Provisions, You may not receive a cancellation of debt for that Total Disability.

**INVOLUNTARY UNEMPLOYMENT:** Following 30 consecutive days of Involuntary Unemployment, You are eligible for a cancellation of part of Your account's balance. Account Shield will cancel an amount equal to 10% of Your account's balance on the date You became involuntarily unemployed, up to $1,000 for each month that You remain involuntarily unemployed. There is a maximum number of 6 continuous monthly cancellations of 10% or $1,000, whichever is less, of Your account's monthly balance on the date of the event prompting cancellation. You must have been employed full-time (but not self-employed or working for a spouse or any other individual living with You on whom You are financially dependent for support and maintenance) and working 30 hours or more per week at a single job on the date of Involuntary Unemployment (this includes loss of employment due to unionized labor disputes, strikes, lock-outs and temporary lay-offs).

**LOSS OF LIFE:** If You die, Account Shield will cancel the balance on Your account on the date of death, up to $10,000; however, Your eligible account balance will not be cancelled if You commit suicide.

**TERMINATION: You may terminate Your Account Shield feature at any time. If You choose to terminate Your Account Shield feature within 60 days of enrollment, We will reimburse Your Account Shield fee. We may terminate Your Account Shield feature, for any reason, by giving You written notice at least 30 days in advance of termination. We will automatically terminate Your Account Shield feature on the earliest of (a) the first date Your account becomes 2 billing cycles past due; or (b) the first date We become aware of a misrepresentation of information by You.**

**COST: The monthly charge rate for the Account Shield feature is $0.90 per $100 of Your average daily balance each month (including any deferred balance). We reserve the right to increase the rate in which case You will be notified in writing at least 30 days in advance of the increase.**

**ADDITIONAL IMPORTANT INFORMATION:**

- **We reserve the right to modify these Contract Provisions, but if the modification is not favorable to You or if there is an additional charge, We will first provide You with notice of the proposed change and an opportunity to terminate this program without penalty before the change takes effect.**
- Account Shield is only offered as a package and its components are not available separately.
- You may be subject to federal, state and local taxes on the amount of Your cancelled balance. Please consult Your tax advisor for guidance on the tax implications, if any, of Account Shield.
- During the qualification period and the time it takes to process Your cancellation, Your account balance is not suspended or cancelled. You remain responsible for finance charges and minimum payment requirements on Your account until the balance is paid off or a cancellation takes place. **Once Your cancellation is processed (except for cancellation due to Property Damage or Loss), Your account will not accept any authorizations for purchases, cash advances, or any other transactions. Your account will remain inactive until Your benefit period ends.**
- There is no limit on the overall number of Account Shield cancellations You may have. However, there is a limit on consecutive monthly cancellations for Involuntary Unemployment as described above. To be eligible for subsequent Account Shield cancellations, You must first be actively working continuously full-time for at least 180 days prior to each qualifying event.

DC-14-11 Ed. 04/01/03

REV040303

6022-BEST BUY-18 (10-03)

## Four Good Reasons Why You Should Enroll in Account Shield™

**1. Property**

Account Shield cancels your balance up to the cost of repairing or replacing merchandise financed on your Best Buy account that is damaged or destroyed by perils such as fire, flood or burglary by forcible entry.

**2. Involuntary Unemployment**

Account Shield cancels, on a monthly basis for up to six months, 10% of your account balance as of the date of the qualifying event, if the primary cardholder becomes involuntarily unemployed for at least 30 consecutive days.

**3. Total Disability**

Account Shield cancels, on a monthly basis, 10% of your account balance as of the date of the qualifying event, if the primary cardholder can no longer work due to illness or injury and is under a doctor's care for at least 30 consecutive days.

**4. Life**

Account Shield cancels your balance, up to $10,000, in the event that you should die.

**Cost**

The fee is 90 cents per $100 of your average daily balance each month. Your fee, which is conveniently added to your monthly payment, decreases as your balance decreases.

**60-Day Refund Period**

Sign up for Account Shield today and we will send you Contract Provisions explaining the program in detail. If you're not convinced that Account Shield offers the protection that you and your family need, simply notify Household within the first 60 days, and we will cancel and refund any fee that appears during the cycle of the trial period.

Note: Account Shield is unavailable in Mississippi, Montana, Guam, the Virgin Islands, Puerto Rico and Canada. Please see the accompanying Account Shield Summary for further details.

REV042303

## IMPORTANT TERMS OF THE HOUSEHOLD BANK PLATINUM, GOLD AND STANDARD MASTERCARDS

You understand that you must be at least the age of majority to be eligible and all the information you furnished on this application is, to the best of your knowledge, complete and accurate and given to obtain credit. You understand that this application, any information you have provided and any information we have obtained in connection with your Best Buy credit card application, may be used by Household Bank (SB), N.A., Las Vegas, Nevada ("Household Bank", "we," "us," "our") in connection with processing your request for a MasterCard. You authorize us to obtain a credit bureau report on you and to verify any of the information you have provided from whatever source we choose. By signing the Household Bank MasterCard application, you are requesting a MasterCard credit card and if a credit card is issued to you, by using or permitting another to use the MasterCard credit card, or cashing credit card checks, you agree to be bound by the terms and conditions of Household Bank's Cardmember Agreement and Disclosure Statement, including any amendments, that will be sent to you with the card ("Cardmember Agreement").

## IMPORTANT INFORMATION:
### ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

**What this means for you:**

When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

### Household Bank (SB), N.A.
### A Household International Company
### Privacy Statement

**Introduction - Our Commitment to You**

Household Bank (SB), N.A., a Household International company, is proud to be part of a financial services organization that has been providing superior products and services to its customers for more than 122 years. We greatly appreciate the trust that you and millions of other Household International customers have placed in us, and we will protect that trust by continuing to respect the privacy of all our applicants and customers even if our formal customer relationship ends.

It is important for you to know that in order to ensure that our customers get the very best service and the highest quality products, Household collects demographic information (like your name and address) and credit information (like information related to your accounts with us). This information comes either directly from you, for instance, from your application and transactions on your account; or, it may come from an outside source such as your credit bureau report. In addition, if you visit our Internet website, we may collect certain information about your Internet usage. If you have selected a credit insurance product, the privacy statement applicable to that credit insurance product is set forth at the end of this privacy statement.

**We Respect Your Privacy**

Since some of the information we gather is not publicly available, we take great care to ensure that this information is kept safe from unauthorized access, and we would never share the information in violation of any regulation or law.

Because Household respects your privacy and values your trust, the only employees or companies who can access your private personal information are those who use it to service your account or provide services to you or to us. Household diligently maintains physical, electronic and procedural safeguards that comply with applicable federal standards to guard your private personal information and to assist us in preventing unauthorized access to that information.

**How We Share Information with Other Household Companies**

From time to time, for general business purposes such as fraud control, or when we think it may benefit you, we do share certain information with companies within the Household family. These companies all provide financial services such as loans or insurance. We may also share certain information with non-financial service providers that become part of the Household family in the future (such as travel, auto, or shopping clubs). The information we share might come from your application, for instance your name, address, or telephone number. Also, the information we share could include your transactions with us or other Household companies (such as your account balance, payment history, and parties to the transaction), your Internet usage or your credit card usage. Except for Vermont residents, the information we share could also include your assets, income, or credit reports.

**Sharing Information with Our Partners**

We also occasionally share certain information with companies that we work with outside of the Household family. This information might include name, address, and telephone number.

**Sharing Information with Other Third Parties**

Except for Vermont residents, we also may share information with companies outside the Household family that are able to extend special offers we feel might be of value to you. These companies may be financial services providers (such as mortgage bankers or insurance agents) or they may be non-financial companies (such as retailers or direct marketers). These offers are typically for products and services that you might not otherwise hear about. The information we may provide them comes from the sources described above and might include your name, address, and phone number. For Vermont residents, Vermont law requires us to obtain your permission in order to share information about you in this way, and we have chosen not to share your information in this way.

We may also provide information to non-Household companies that perform operational services related to your account, or marketing services for us. The sharing of information with these types of companies is permitted by law. Such a company might include a financial company (such as a mortgage banker or insurance service provider) with whom we have a joint marketing agreement or a non-financial company (such as a data processor or internet service provider) with whom we have a service agreement. The information we may share also comes from the sources described above and might include your name, address, phone number, and account experience with us.

Finally, we provide information about you to non-Household companies such as credit reporting agencies and companies which provide services related to your account. This information sharing is also permitted by law.

**How to Opt-Out (non-Household companies) (Not applicable to Vermont residents)**

If you do not want us to share your private information with non-Household companies (unless we are permitted or required by law to do so), please let us know by simply calling us at 1-800-365-3804. We will be happy to comply with your "opt-out" request, which will apply to all private label accounts you have with Household Bank (SB), N.A. Private label accounts are not general purpose accounts such as MasterCard® or Visa®, but are accounts that may be used only at the specific merchant or merchants named on the credit card or account. An opt-out request by any party on a joint account will apply to all parties on the joint account. Opt-out requests will not apply to information sharing that is permitted by law. Please allow sufficient time for us to process your request.

**How to Opt-Out (Household companies) (Not applicable to Vermont residents)**

If you do not want us to share your credit information (such as your credit bureau information) with other Household companies, please let us know by simply calling us at 1-800-365-3804. This request will not apply to information about your transactions or experience with Household (such as account information, account usage, or payment history) and will only apply to the private label accounts you have with Household Bank (SB), N.A. An opt-out request by any party on a joint account will apply to all parties on the joint account.

### HOUSEHOLD INSURANCE GROUP
### THE ASSURANT GROUP
### SOUTHERN COUNTY MUTUAL INSURANCE COMPANY
### Privacy Statement for Customers with Credit Insurance

This paragraph applies to customers who have selected credit insurance provided by Household Insurance Group ("HIG"), the Assurant Group ("Assurant"), or Southern County Mutual Insurance Company ("Southern County").* Like Household, HIG, Assurant, and Southern County respect and protect your privacy. To administer the credit insurance you requested, HIG, Assurant, and Southern County collect demographic information (like your name and address) and account information (like information related to your account with Household). This information comes either directly from you, for instance, from your application; or it may come from Household, such as information about your account. HIG, Assurant, and Southern County take great care to protect the privacy of this information, for example, the only employees or companies who can access such information are those who need it to provide services in connection with your credit insurance. Moreover, in compliance with federal standards, HIG, Assurant, and Southern County maintain physical, electronic and procedural safeguards to protect against unauthorized use or disclosure of that information. HIG, Assurant and Southern County do not disclose information about you to their respective affiliates or to third parties, except as permitted by law.

*Household Insurance Group includes Household Life Insurance Company, Wesco Insurance Company, Service General Insurance Company, First Central National Life Insurance Company of New York, Household Life Insurance of Delaware and such other companies Household Insurance Group may subsequently acquire. The Assurant Group includes American Reliable Insurance Company, American Bankers Insurance Company of Florida, American Bankers Life Assurance Company of Florida, Financial Insurance Exchange, Bankers American Life Assurance Company and Union Security Life Insurance Company.

*Truth In Lending Disclosure Chart For Best Buy Credit Card*

| | |
|---|---|
| **Annual Percentage Rate (APR) for Purchases** | As of 10/1/03 the Standard Rate is **19.8%**, which may vary. |
| **Other APRs** | Default Rate: **23.8%** as of 10/1/03, which may vary.† |
| **Variable-rate Information** | Your APR may vary. The Standard Rate for purchases is determined monthly by adding 14.4% to the Prime Rate. The Default Rate is determined monthly by adding 18.4% to the Prime Rate.†† |
| **Grace Period for Repayment of Balance for Purchases** | No finance charges are assessed on new purchases if the balance is paid in full each month within 25 days after the billing date. |
| **Method of Computing the Balance for Purchases** | Two Cycle Average Daily Balance (Including new purchases) |
| **Annual Fees** | **NONE** |
| **Minimum Finance Charge** | **$2.00** |
| **Transaction Fee for Purchases** | **NONE** |
| Late payment fee: $10 for combined account balance of $100 or less; $29 for combined account balance from $100.01 to $1,000; $35 for combined account balance of $1,000.01 or more. Overlimit fee: $25 | |

† If you fail to make two consecutive Total Minimum Payments Due and are 30 days past due, you will no longer be eligible for the Standard Rate and all existing Promotional Credit Plans will terminate, and your entire Account balance will be subject to the Default Rate.

†† Your APR may vary and is based on the highest of the U.S. Prime Rate(s) published in *The Wall Street Journal* "Money Rates Section" on the first or last day of the month that *The Wall Street Journal* is published, plus a "Spread" of 14.4 percentage points for the Standard Rate and a "Spread" of 18.4 percentage points for the Default Rate. Any changes in the Prime Rate will take effect on the first day of your billing cycle beginning in the next month. The Standard Rate will never be less than 19.8%. The Default Rate will never be less than 23.8%.

**NOTICE FOR MARRIED WISCONSIN RESIDENTS:** No provision of a marital property agreement (including a Statutory Terminable Marital Property Classification Agreement under Sec. 766.588 Wis. Stats., or a Statutory Terminable Individual Property Classification Agreement under 766.70) adversely affects the interest of the creditor unless the creditor, prior to the time the credit is granted, is furnished a copy of the agreement, statement or decree or has actual knowledge of the adverse provision when the obligation to the creditor is incurred.

**NOTICE FOR CALIFORNIA RESIDENTS:** California law requires that we inform customers that should they fail to fulfill the terms of their credit obligation, a negative report reflecting on their credit record may be submitted to a credit reporting agency. If you are married, you may apply for credit in your own name.

**NOTICE FOR FLORIDA RESIDENTS: You (borrower) agree that, should we obtain a judgment against you, a portion of your disposable earnings may be attached or garnished (paid to us by your employer), as provided by Florida and Federal law.**

**NOTICE FOR MAINE RESIDENTS:** We may request a consumer report in connection with your application for credit. You may ask whether a consumer report was obtained by us and we will tell you the name and address of the consumer reporting agency, if a report was obtained.

**NOTICE FOR NEW YORK RESIDENTS:** A consumer credit report may be requested in connection with this application or in connection with updates, renewals or extensions of any credit granted as a result of this application. Upon your request, you will be informed whether or not such a report was requested and, if so, the name and address of the agency that furnished the report. New York residents may contact the New York state banking department to obtain a comparative listing of credit card rates, fees and grace periods. New York State Banking Department: 1-800-522-3330.

**NOTICE FOR OHIO RESIDENTS:** The Ohio Laws against discrimination require that all creditors make credit equally available to all creditworthy customers and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

**NOTICE FOR VERMONT RESIDENTS:** A consumer credit report may be requested in connection with this application or in connection with updates, renewals or extensions of any credit granted as a result of this application. Upon your request, you will be informed whether or not such a report was requested and, if so, the name and address of the agency that furnished the report.

**IMPORTANT TERMS OF BEST BUY CREDIT CARD**

**1. GENERAL:** Each person signing and submitting, or electronically or telephonically submitting the application for a credit card account ("Account") as applicant or joint applicant applies for an Account with Household Bank (SB), N. A., a national banking association, and requests one or more credit card(s) bearing the name or tradename of Best Buy to be used in connection with the Account. The word "Card" means any credit card(s) issued to you or an authorized user of your Account. In this Agreement, the words "you" and "your" refer to the applicant and joint applicant named on the credit card application and the words "we", "us" and "our" refer to Household Bank (SB), N. A., located at 1111 Town Center Drive, Las Vegas, Nevada 89144.

If we accept your application to open an Account, you agree that you will only purchase goods and services for personal, family and household purposes from merchants which honor the Card.

**2. FINANCE CHARGES:** (a) Finance Charges, which are part of the interest on your Account, are calculated separately for each Promotional Credit Plan and each Regular Credit Plan (each a "Credit Plan"). Promotional Credit Plans with different promotional due dates or terms are treated as different Credit Plans for this purpose. The total Finance Charge for the billing cycle is the sum of the Finance Charges for each Credit Plan, subject to the minimum Finance Charge under Section 3.

(b) Finance Charges are imposed on purchases from the transaction date until paid in full, except that no Finance Charge is imposed in a billing cycle ("Current Cycle") on:

(i) a new purchase on a Regular, Delayed Monthly Payment, Reduced Rate, or Special Repayment Factor Credit Plan if the combined Previous Balance of those Credit Plans at the beginning of the Current Cycle is zero or a credit balance, or is paid in full before the Payment Due Date that falls during the Current Cycle;

(ii) any balance on a Regular, Delayed Monthly Payment, Reduced Rate, or Special Repayment Factor Credit Plan if the combined Previous Balance of those Credit Plans at the beginning of the Current Cycle is zero or a credit balance, or is paid in full before the Payment Due Date that falls during the Current Cycle and the combined New Balance of those Credit Plans at the beginning of the previous billing cycle ("Previous Cycle") is zero or a credit balance, or is paid in full before the Payment Due Date that falls during the Previous Cycle;

(iii) a purchase on a Waived Finance Charge Credit Plan for the specified promotional period;

(iv) a purchase on a Same As Cash Credit Plan if the full cash sales price is paid in full before the promotional due date.

(c) If a Finance Charge is imposed on a Credit Plan other than a Same As Cash Credit Plan in the Current Cycle, the amount will be the sum of the following daily Finance Charge calculations for the Credit Plan during the Current Cycle and (if applicable) the previous billing cycle ("Previous Cycle"): (i) the applicable Daily Periodic Rate for the Current Cycle times the Daily Balance for each day in the Current Cycle; and (ii) the applicable Daily Periodic Rate for the Previous Cycle times the Daily Balances of any new purchases on the Credit Plan during the Previous Cycle on which Finance Charges were not imposed during the Previous Cycle.

(d) If a Finance Charge is imposed on a Same As Cash Credit Plan, the amount will be the sum of the following daily Finance Charge calculations for the Credit Plan during the Current Cycle and each of the prior billing cycles (each a "Prior Cycle") from the transaction date of the purchase until the Current Cycle: (i) the applicable Daily Periodic Rate for the Current Cycle times the Daily Balance for each day in the Current Cycle; and (ii) the applicable Daily Periodic Rate for each Prior Cycle times the Daily Balances of the Credit Plan for each day during each Prior Cycle.

(e) The "Daily Balance" of a Credit Plan is determined by taking the opening balance of the Credit Plan for that day, adding any new purchases made on the Credit Plan that day and subtracting any payments or credits applied to the Credit Plan that day. For purposes of determining the Daily Balance of the Previous Cycle, the only purchases considered are new purchases on which Finance Charges were not imposed in the Previous Cycle. The previous day's Finance Charges and credit insurance premiums or debt cancellation fees (if applicable) are included in the Daily Balance of a Credit Plan, except that for any Same As Cash Credit Plan, credit insurance premiums or debt cancellation fees (if applicable) are not included in the Daily Balance of that Credit Plan during the promotional period. Late fees, overlimit fees, returned check fees and other fees on the Account are added to the Daily Balance of a Credit Plan when imposed. If a purchase on a Credit Plan posts after the beginning of a billing cycle, but the transaction occurred prior to the beginning of the billing cycle, the amount of the transaction plus related Finance Charges outstanding on each day from the transaction date until the first day of the billing cycle in which the transaction posts will be added to the Daily Balance of the Credit Plan for the first day of the billing cycle in which the transaction posts.

(f) The Daily Periodic Rate which is used to determine your Finance Charges and the corresponding Annual Percentage Rate, will be variable rates which may change monthly. The Daily Periodic Rate will be one-three hundred sixty fifth of the sum of the highest of the Prime Rate(s) published in *The Wall Street Journal* "Money Rates Section" on the first or last day of the month that *The Wall Street Journal* is published, plus a "Spread" of **14.4** percentage points for the Standard Rate and a "Spread" of **18.4** percentage points for the Default Rate. Any changes in the Prime Rate will take effect on the first day of your billing cycle beginning in the next month.

The minimum rate of **Finance Charge** for the Standard Rate is a Daily Periodic Rate of **.05425%** (corresponding **19.8% Annual Percentage Rate**). The minimum rate of **Finance Charge** for the Default Rate is a Daily Periodic Rate of **.06521%** (corresponding **23.8% Annual Percentage Rate**). For example, as of the billing cycle beginning October 1, 2003, the Finance Charge for the Standard Rate would have been a Daily Periodic Rate of **.05425%** (corresponding **19.8% Annual Percentage Rate**) and the Finance Charge for the Default Rate would have been a Daily Periodic Rate of **.06521%** (corresponding **23.8% Annual**

IMPORTANT CUSTOMER DISCLOSURE INFORMATION ATTACHED - PLEASE DETACH AND RETAIN FOR YOUR RECORDS

Percentage Rate). An increase in the Prime Rate will increase your applicable Daily Periodic Rate which may increase the Finance Charge and the Minimum Monthly Payment due on your Account. You will qualify for the Standard Rate until you have failed to make two consecutive Total Minimum Payments Due and are 30 days past due.

**3. MINIMUM FINANCE CHARGE:** A minimum Finance Charge of $2.00 will be assessed for each billing cycle in which a Finance Charge is payable.

**4. FEES:** We may impose on your Account the following fees, which will be added to your Account when assessed:

a) **Late Payment Fee:** Your Late Payment Fee will be based on your combined account balance (less any Delayed Monthly Payment credit plan balances) at the time of your payment due date. If you fail to pay us the Total Minimum Payment Due in full by the Payment Due Date on your billing statement, you agree to pay a Late Payment Fee of $10 for combined account balance of $100 and below; $29 for combined account balance of $100.01 to $1,000; and $35 for combined account balance of $1,000.01 and over.

b) **Returned Check Fee:** You agree to pay $25 each time any payment check on your Account is returned unpaid by your bank or other financial institution for any reason.

c) **Document and Research Fees:** If you ask us to provide you with a replica of your sales slip, billing statement or other document (except in connection with a billing error claimed in accordance with "Your Billing Rights"), we may charge you the following fees: (i) Billing statement: $5 per document; (ii) Sales/credit slip: $5 per document; (iii) Payment instrument: $5 per document; (iv) Research fee: $15 per hour (including payment histories). We reserve the right to change the Document and Research Fee Schedule from time to time. You may call Customer Service for a current fee schedule.

d) **Reissued Card Fee:** You may be charged $5 each time you request that your credit card be reissued.

e) **Direct Check Fee:** In the event that you pay your account with a direct check, you agree to pay up to a $15 fee for each direct check. We reserve the right to change the Direct Check Fee from time to time. You may call Customer Service for a current fee schedule.

f) **Overlimit Fee:** In the event you exceed your credit limit, you will be charged an Overlimit Fee of $25.

g) **Collection Costs:** If, after you default, we refer your Account to an attorney and/or collection agency for collection, we may charge you our collection costs, including court costs and reasonable attorneys' fees, when and as permitted by applicable law.

**5. SECURITY:** Except as indicated below, you grant us a purchase money security interest in the goods purchased with your Card. For purposes of determining which items are subject to a security interest, payments received will be deemed to be applied first to any unpaid insurance premiums or debt cancellation fees (if applicable), Finance Charges, and fees and then to pay for purchases on the Account in the order in which they were made. When sufficient payments are made to repay the portion of the Account balance attributable to the purchase of a particular good, we will release our purchase money security interest in that good. Goods covered by a security interest may be taken from you if you do not pay on time. We may require you to make them available at a convenient place of our choice. We waive any security interest in your home if the goods are installed and in any goods purchased with credit card checks. We take no security interest in goods where the original purchase price is less than $200 if you live in New York and in goods where the original purchase price is less than $700 if you live in Maryland.

**6. ARBITRATION:** Any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future), including initial claims, counter-claims, cross-claims and third party claims, arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement ("Claim"), shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed. The party initiating the arbitration proceeding shall have the right to select one of the following three arbitration administrators: the National Arbitration Forum ("NAF"), the American Arbitration Association ("AAA") or JAMS. The arbitrator shall be a lawyer with more than ten years experience or a retired or former judge. We agree not to invoke our right to arbitrate an individual Claim you may bring in small claims court or an equivalent court, if any, so long as the Claim is pending only in that court. The rules and forms of the NAF, AAA and JAMS may be obtained by writing to these organizations at the addresses listed below. Our address for service of process under this provision is HRS USA, P.O. Box 279, Mount Prospect, IL 60056.

Any participatory arbitration hearing that you attend will take place in the city nearest to your residence where a federal district court is located or at such other location as agreed by the parties. On any Claim you file, you will pay the first $50 of the filing fee. At your request we will pay the remainder of the filing fee and any administrative or hearing fees charged by the arbitration administrator on any Claim submitted by you in arbitration up to a maximum of $1,500. If you are required to pay any additional fees to the arbitration administrator, we will consider a request by you to pay all or part of the additional fees; however, we shall not be obligated to pay any additional fees unless the arbitrator grants you an award. If the arbitrator grants an award in your favor, we will reimburse you for any additional fees paid or owed by you to the arbitration administrator up to the amount of the fees that would have been charged if the original Claim had been for the amount of the actual award in your favor. The parties shall bear the expense of their respective attorney's fees, except as otherwise provided by law. If a statute gives you the right to recover any of these fees, or the fees paid to the arbitration administrator, these statutory rights shall apply in the arbitration notwithstanding anything to the contrary contained herein. If the arbitrator issues an award in our favor you will not be required to reimburse us for any fees we have previously paid to the arbitration administrator or for which we are responsible.

This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1 - 16 (the "FAA"). The arbitrator shall apply applicable substantive law consistent with the FAA and, if requested by either party, provide written reasoned findings of fact and conclusions of law. The arbitrator's award shall not be subject to appeal except as permitted by the FAA. The parties agree that the award shall be kept confidential. Judgment upon the award may be entered in any court having jurisdiction.

This arbitration agreement shall survive termination of your Account as well as the repayment of all amounts borrowed hereunder. If any portion of this arbitration agreement is deemed invalid or unenforceable under any law or statute consistent with the FAA, it shall not invalidate the remaining portions of this arbitration agreement or the Agreement. In the event of a conflict or inconsistency between the rules and procedures of the arbitration administrator and this arbitration agreement, this arbitration agreement shall govern. No class actions or joinder or consolidation of any Claim with the claim of any other person are permitted in arbitration without the written consent of you and us.

**THE PARTIES ACKNOWLEDGE THAT THEY HAD A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER PARTY.**

You may contact, obtain the arbitration rules of, or file a Claim with NAF, AAA, or JAMS as follows:

| National Arbitration Forum | American Arbitration Association | JAMS |
|---|---|---|
| P.O. Box 50191<br>Minneapolis, MN 55405<br>www.arb-forum.org<br>Code of Procedure | 1150 Connecticut Ave. NW, 6th Floor<br>Washington, DC 20036-4104<br>www.adr.org<br>Arbitration Rules for Consumer Disputes (Claims under $10,000).<br>Commercial Arbitration Rules (all other claims). | 45 Broadway<br>New York, NY 10005<br>www.jamsadr.com<br>Financial Services Arbitration Rules and Procedures. |

**7. MONITORING PRACTICES:** You agree that our supervisory personnel may listen to and record telephone calls between you and our representatives in order to evaluate the quality of our service to you and other cardmembers.

**The information about the costs of the Card described in this application and Important Terms of Best Buy Credit Card is accurate as of October, 2003. This information may have changed after that date. To find out what may have changed write to us at 1111 Town Center Drive, Las Vegas, Nevada 89144.**

## YOUR BILLING RIGHTS—KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case of Errors or Questions About Your Bill:** If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error.
- If you need more information, describe the item you are not sure about.

**Your Rights and Our Responsibilities After We Receive Your Written Notice:** We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases:** If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right: (a) You must have made the purchase in your home state or, if not within your home state within 100 miles of your current mailing address; and (b) The purchase price must have been more than $50. These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.