IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES JEFFERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:08cv121-WKW |
| | ) | |
| BEST BUY COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER and RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff commenced this action in the Circuit Court of Montgomery County against

defendants Best Buy Company, Inc. and HSBC Bank Nevada, N.A., bringing claims arising

from an allegedly unlawful charge to plaintiff's Best Buy credit card. Defendants,

represented in this action by attorney Michael Shipper, removed the action to this court on

February 20, 2008. Defendants subsequently filed a motion to compel arbitration based on

an arbitration clause in the application plaintiff had completed for the Best Buy/HSBC credit

card. On June 23, 2008, the district judge granted the motion to compel arbitration and

stayed the action in this court. The court ordered the parties to file status reports every ninety

days.

On October 16, 2009, the parties filed a status report stating that they had agreed to

a settlement on August 3, 2009, that they had so advised the American Arbitration

Association, and that the American Arbitration Association had closed its case on August 12,

2009. The status report indicated that plaintiff had subsequently changed his mind about

settling and refused to execute the written settlement agreement.  The court construed the status report as a motion by defendant Best Buy to enforce the settlement agreement. Plaintiff's attorneys, Michael Lindsey and Wallace Seals, moved to withdraw as counsel for the plaintiff and, on October 28, 2009, the court granted the motions to withdraw.  The court allowed plaintiff time to find alternate counsel to appear in this action and to respond to the motion to enforce the settlement agreement.  On December 1, 2009, the District Judge referred the case to the undersigned Magistrate Judge for action or recommendation on all pretrial matters.

On December 15, 2009, this court set this matter for an evidentiary hearing to be conducted on January 14, 2010. At the hearing, because it appeared that most or all facts relevant to the motion to enforce the settlement agreement were not disputed, the court discussed the facts with the parties to determine whether the parties would stipulate to certain facts and whether other facts were in dispute.  During the hearing, the parties stipulated to the following facts:

1.  Plaintiff filed this action in the Circuit Court of Montgomery County, Alabama, bringing claims against the defendants arising from an allegedly unlawful charge to plaintiff's credit card.

2.  Plaintiff retained attorney Michael Lindsey to represent him in this action.

3.  After the action was removed to this court, and after this court ordered plaintiff to submit his dispute to arbitration, plaintiff commenced arbitration proceedings through the

American Arbitration Association.

4.  On August 3, 2009, at approximately 3:30 p.m., Lindsey contacted plaintiff and advised plaintiff that defendants had made an offer to settle.

5.  Plaintiff rejected the offer and made a counter-offer.

6.  Lindsey later spoke with the plaintiff and advised him that the earlier offer was the "best that he could get."

7.  Plaintiff then, reluctantly, told Lindsey that plaintiff agreed to the offer.

8.  Plaintiff thereafter tried to reach Lindsey to tell Lindsey that he did not wish to accept the offer, but Lindsey had left the office.

9.  When plaintiff next spoke with Lindsey, plaintiff told Lindsey that he had read the American Arbitration Association Rules and was dissatisfied that Lindsey had not explained plaintiff's rights.

10.  During that conversation, Lindsey told plaintiff that he had already relayed plaintiff's acceptance to defendants' counsel.

11.  Lindsey thereafter mailed plaintiff an agreement to sign.

12.  Plaintiff refused to sign the agreement.

13.  Lindsey remained plaintiff's attorney in this matter until October 28, 2009, when the court granted Lindsey's motion to withdraw from representing the plaintiff.

The following additional facts were presented by the sworn testimony of plaintiff's former attorney, Michael Lindsey, at the hearing.  At the conclusion of the testimony, the

court asked plaintiff, as to each of the facts listed below, whether plaintiff had any reason to believe that these facts were not true or had any evidence contradicting these facts.  Plaintiff responded that he did not.  Accordingly, the following facts – while not included in the stipulation – are undisputed:

1.  The printed copies of the e-mail exchanges attached to Doc. # 19 (Joint Status Report filed October 16, 2009) and Doc. # 26 (Defendants' Brief in Support of Their Motion to Enforce Settlement Agreement) accurately reflect the e-mail exchanges between Lindsey and Shipper.

2.  On October 9, 2009, Lindsey sent an e-mail to Shipper explaining that, after plaintiff had agreed to the settlement offer and after Lindsey had relayed the acceptance to Shipper, plaintiff had changed his mind and no longer wanted to settle for that amount.

3.  Lindsey left his office before he relayed the plaintiff's acceptance to Shipper.

4.  When he relayed plaintiff's acceptance to Shipper, Lindsey had not received any communication from the plaintiff revoking plaintiff's earlier decision to accept the settlement.

5.  Lindsey and Shipper agreed to conduct settlement transactions by electronic mail, including reaching an agreement by electronic mail.

6.  Lindsey communicated plaintiff's acceptance of defendants' offer to settle the case, terminating the litigation for the amount of $2,750, including a term that the settlement would remain confidential.

Copies of the electronic mail correspondence between Lindsey and Shipper are attached to Documents ## 19 and 26.  They evidence the following exchanges between the attorneys:

**Lindsey to Shipper, August 3, 2009 at 2:59 p.m.**

Hi Mike:

My client offers to accept $3000 as a full, final settlement, with confidentiality. This is essentially the $2750 you offered, plus the initial filing fee Mr. Jefferson paid in Montgomery Circuit Court.  Please let me know if this is acceptable.

[signature block omitted]

**Shipper to Lindsey, August 3, 2009 at 3:28 p.m.**

Mike - - $2750 was my limit. I can call my client (he is not available until 4) but he was firm on that # and I doubt he'll move to 3.

**Lindsey to Shipper, August 3, 2009 at 3:42 p.m.**

Mike . . . 2750 will work.  I had to leave the office.  Can you let the arbitrator know we're settled?

This e-mail bears a notation that it was "Sent via BlackBerry by AT&T"

(Exhibit A to Doc # 26; Exhibit A to Doc. # 19).

At the hearing, plaintiff testified that he purchased a computer from defendant Best Buy, charging it to his Best Buy credit card. He further testified that the computer malfunctioned within thirty days and he took it back to Best Buy to exchange for another computer.  When he did so, Best Buy placed a charge for the second computer on plaintiff's Wachovia Bank credit card.  Plaintiff testified that, when he discovered the duplicate charge,

he could not get Best Buy to refund his money. He testified that he initiated this lawsuit only after trying for an extended period of time to settle the matter amicably. Plaintiff admitted that he initially agreed to the settlement, although he did so reluctantly and against his better judgment. He said that Lindsey spoke with him about the settlement for about five minutes, that Lindsey told plaintiff repeatedly that this offer was the best that he could get for the plaintiff and that Lindsey wanted plaintiff to take the offer. Plaintiff finally relented and accepted the offer because he felt psychological pressure to do so and because he did not want to appear stubborn. He further testified that, after the telephone call with Lindsey, he was able to obtain a copy of the American Arbitration Association's rules from its website. Plaintiff stated that he had asked his attorney to explain his rights to him but that Lindsey had not done so and that, until plaintiff read the rules, he did not fully understand his rights. Plaintiff testified that, after he read the rules, he decided that he did not want to accept the settlement offer.

## DISCUSSION

"'[C]onstruction and enforcement of settlement agreements [are] governed by principles of state law applicable to contracts generally.'" <u>Burke v. Smith</u>, 252 F.3d 1260, 1266 (11th Cir. 2001)(citation omitted). Under Alabama law, if an attorney has his client's express authority to consent to a settlement of an action pending before the trial court, the attorney "has authority to bind his client, in any action or proceeding, by any agreement in relation to such case, made in writing, or by an entry to be made on the minutes of the court."

6

Ala. Code § 34-3-21; Alexander v. Burch, 968 So.2d 992 (Ala. 2006).  A letter signed by a party's attorney is a sufficient writing to bind that party to a settlement pursuant to § 34-3-21. See Beverly v. Chandler, 564 So.2d 922 (Ala. 1990)(upholding trial court's enforcement of agreement pursuant to Ala. Code § 34-3-21 where plaintiff's counsel had sent a letter confirming the settlement, after concluding that counsel had authority to settle); Mays v. Julian LeCraw and Co., Inc., 807 So.2d 551 (Ala. Civ. App. 2001)(letters between counsel sufficient for enforcement of agreement); Spurlock v. Pioneer Financial Services, Inc., 808 F. Supp. 782 (M.D. Ala. 1992)(agreement need not be signed by the party to be enforceable under § 34-3-21).

In this case, it is undisputed that plaintiff gave Lindsey authority – albeit reluctantly – to settle his pending claims against defendants for the sum of $2750.[1]  It is also undisputed that, at the time Lindsey communicated plaintiff's acceptance of the offer to Shipper, plaintiff had not reached Lindsey to tell Lindsey that he no longer wished to settle the case. Thus, Lindsey had his client's express authority to settle the case with defendants.

The legal issue remaining before the court is whether Lindsey's e-mail correspondence to Shipper satisfied the requirement of Ala. Code § 34-3-21 that the agreement be "in writing."[2]  Lindsey testified at the hearing that he and Shipper had agreed

---

[1]  In addition to the stipulated facts at the hearing, plaintiff states, in his response to the motion to enforce, that "[a]fter a discussion with my attorney and being advised that this was the best that he could get, I reluctantly agreed to the offer."  (Doc. # 25, ¶ 4).

[2]  The settlement was not entered on the minutes of the court, so this portion of the statute is not relevant.

to conduct settlement transactions by electronic mail, including reaching an agreement by electronic mail.  (See Undisputed Fact # 5).  Because it is undisputed that Lindsey and Shipper so agreed, Alabama's Uniform Electronic Transactions Act is applicable to the transaction.  Ala. Code § 8-1A-5(b).  Under the UETA, a written record or agreement may not be denied legal effect simply because it is in electronic form.  Ala. Code § 8-1A-7.  The statute specifies that, "[i]f  a law requires a record to be in writing, an electronic record satisfies the law."  Ala. Code § 8-1A-7(c).[3]  Lindsey's electronic communication to Shipper accepting Best Buy's settlement offer, therefore, satisfies the "in writing" requirement of Ala. Code § 34-3-21. Accordingly, plaintiff's agreement to settle his claims against defendant Best Buy and HSBC for the sum of $2,750, with confidentiality, is due to be enforced.

## MOTION TO AMEND

During the hearing, plaintiff filed a motion for leave to amend his complaint.  He alleges that he "recently" learned that Best Buy sold him a refurbished computer which was "alleged to be brand new."  (Doc. # 36).  In response to an order from the court, plaintiff indicates that the computer referenced in the proposed amendment is the second computer he received from Best Buy, that the computer was purchased as "new," and that the plaintiff, on December 7, 2009, discovered serial numbers on the base of the computer indicating that

---

[3]  See also Alabama Comment 7 to § 8-1A-7 ("[P]romises contained in electronic records covered by UETA would qualify as 'promises in writing' under the statute of limitations contained in Ala. Code § 6-2-34."); Ala. Code § 8-1A-8 ("[I]f parties have agreed to conduct a transaction by electronic means and a law requires a person to provide, send, or deliver information in writing to another person, the requirement is satisfied if the information is provided, sent, or delivered, as the case may be, in an electronic record capable of retention by the recipient at the time of receipt.").

the machine is refurbished. (Doc. # 42).

Defendant objects to the motion to amend on three grounds: (1) that if the settlement agreement is enforced, the claim stated in plaintiff's proposed amendment is moot; (2) the amendment is untimely because it comes over two years after the complaint was filed; and (3) the claim stated in the proposed amendment is also subject to arbitration. (Doc. # 40).

With regard to timeliness, the court notes that no scheduling order was entered in this case before it was ordered to arbitration, and no such order has been entered since the case returned to this court. There is presently no deadline in effect for amending the pleadings and this case was pending before the arbitrator for much of the time since it was initially removed to this court. Accordingly, plaintiff's motion for leave to amend is not untimely.

Additionally, defendant Best Buy has cited no authority or evidence of record in support of its objection to the motion to amend. It is not apparent to the court at this juncture, since plaintiff contends that he did not discover the facts supporting his fraud claim until December 2009, that this claim would necessarily be barred by the settlement of the claims which were then pending in arbitration. Additionally – without the benefit of any briefing by the defendant and in view of plaintiff's testimony at the hearing that the second computer was charged to plaintiff's Wachovia card, not to the HSBC card which was subject to the agreement found by the District Judge to require arbitration – the court cannot conclude that the proposed fraud claim is subject to arbitration. Even if it were, that would not be grounds for denying the motion for leave to amend unless the court further concluded that the

9

settlement agreement necessarily encompasses the proposed claim.   In the present posture of this case, the court is guided by the permissive policy set forth in Fed. R. Civ. P. 15(a), which requires that the court  "freely give leave [to amend] when justice so requires." Accordingly, the court will grant plaintiff's motion for leave to amend.  Defendant may, of course, move to dismiss the fraud claim as permitted by the Federal Rules on any appropriate grounds.[4]

## CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that defendants' motion to enforce the settlement agreement (Doc. # 19) be GRANTED to the extent that plaintiff agreed to settle his pending claims against defendants for the sum of $2,750.00, with confidentiality.[5]

Additionally, it is ORDERED that plaintiff's motion to amend (Doc. # 36) is GRANTED. The Clerk is DIRECTED to docket the motion as plaintiff's amended complaint, and to docket plaintiff's statement (Doc. # 42) as a second amendment to the complaint.

---

[4]  The court anticipates that any such motion to dismiss will be  accompanied by a supporting brief including citations to applicable law.

[5]   Defendants seek an order enforcing the written agreement attached as Exhibit B to defendants' brief.  (Doc. # 26-3).  Exhibit B, the six-page written agreement, was not signed by the plaintiff and there is no evidence that plaintiff ever agreed to its specific terms.  The agreement is due to be enforced only to the extent the agreement is evidenced by the e-mail communications between Shipper and Lindsey – *i.e.*, that plaintiff agreed to settle his claims against defendants for the sum of $2,750.00, "with confidentiality."

10

Additionally, it is further ORDERED that plaintiff Jefferson is DIRECTED to file, **on or before March 31, 2010**, a written notice advising the court of the specific relief he seeks on the fraud claim including, if applicable, the amount he seeks in monetary damages.

It is further ORDERED that defendant Best Buy[6] may respond to the amended complaint on or before **April 15, 2010**.

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve a copy on the parties to this action.  The parties are DIRECTED to file any objections to this Recommendation on or before March 31, 2010.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  <u>Resolution Trust Co. v. Hallmark Builders, Inc.</u>, 996 F.2d 1144, 1149 (11th Cir. 1993);  <u>Henley v. Johnson</u>, 885 F.2d 790, 794 (11th Cir. 1989).

---

[6]  Plaintiff does not allege any conduct attributable to defendant HSBC in the amendment, and the court construes the amendment to bring a fraud claim against defendant Best Buy only.

11

Done, this 18th day of March, 2010.

/s/ Susan Russ Walker

SUSAN RUSS WALKER

CHIEF UNITED STATES MAGISTRATE JUDGE